# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MOHAMMED NAZIR BIN LEP, <br> Petitioner, <br> v. <br> DONALD TRUMP, et al., <br> Respondents. | Civil Case No. 19-2799 (JDB) |

## MEMORANDUM OPINION & ORDER

Petitioner Mohammed Nazir Bin Lep, a detainee at the Guantanamo Bay Naval Station in Guantanamo Bay, Cuba, seeks a court order enjoining the government ▆▆▆ ostensibly for a military commission proceeding but before any charges against Bin Lep have actually been referred to a military commission. ▆▆▆ Before this Court is petitioner's oral motion for temporary emergency relief, which was supported by the arguments in petitioner's motion for a preliminary injunction and additional memorandum of law. See Pet'r's Mot. for a Preliminary Injunction [ECF No. 4] ("Pet'r's PI Mot."); Pet'r's Mem. of Law on Jurisdiction and Other Issues. The government opposes petitioner's motion for temporary emergency relief. See Resp'ts' Opp. to Pet'r's Mot. for a Preliminary Injunction and Request for Emergency Relief ("Resp'ts' Opp. Br."). For the reasons below, this Court grants petitioner's request for temporary emergency relief and orders that the government is restrained from conducting the first ▆▆▆ scheduled to commence on ▆▆▆

1

## I. Background

Based on the briefing and exhibits presented to the Court thus far, the Court's understanding of the facts is as follows. Bin Lep is currently detained at the Guantanamo Bay Naval Station pursuant to the 2001 Authorization for Use of Military Force. Resp'ts' Opp. Br. at 2. There is, however, the possibility that Bin Lep will be tried for various offenses by a military commission. The Military Commissions Act of 2009 authorizes the President to establish military commissions to try alien unprivileged enemy belligerents for violations of the laws of war or other offenses triable by military commissions. 10 U.S.C. § 948b(a)–(b).

Before a military commission proceeding begins, charges against the accused must be sworn by a member of the armed forces having knowledge or reason to believe that the matters alleged are true. Id. § 948q. Then, the Secretary of Defense or his designee—here, the Convening Authority—considers the sworn charges and supporting evidence and decides whether to dismiss the charges, forward them to another authority for disposition, or refer the charges to a military commission. Rules for Military Commissions ("R.M.C.") 401, 406, 601. Finally, a military commission must be convened. R.M.C. 504, 601. All of these elements are required for a "referral" of charges, which is "the order of a convening authority that charges against an accused will be tried by a specified military commission." RM.C. 601(a), 601(a) Discussion.

Here, the Office of the Chief Prosecutor of the Department of Defense ("the prosecution") swore draft charges against Bin Lep on December 7, 2017 for his role in various terrorist plots. Resp'ts' Opp. Br. at 2. Those charges are currently pending with the Convening Authority. Id. But twenty-one months later, the Convening Authority has still not referred the charges to a military commission. Id.

In June 2018, the prosecution submitted a request to the Convening Authority ▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ though the request was not served on the defense. See Zelnis Decl. ¶ 4; Attachment A to Zelnis Decl. In September 2018, the prosecution submitted a superseding request ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ See Zelnis Decl., Ex. 1 to Opp. Br at ¶¶ 2–4. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

On March 8, 2019, the Convening Authority granted the prosecution's request ▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ See Convening Authority's March 8, 2019 Order, Ex. 2-1 to Pet'r's PI Mot. ("March 8, 2019 Order") [ECF No. 4-2] at 1. The Convening Authority ordered that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Id. at 2.

Bin Lep claims that he objected ▇▇▇▇▇▇▇▇ and submitted various requests seeking additional discovery, the declassification of information, and continuances of the timeline set by the Convening Authority. See Pet'r's PI Mot. at 5 (citing Exs. 3–7 to Pet'r's PI Mot.). On September 11, 2019, the Convening Authority denied Bin Lep's request for reconsideration of its March ▇▇ order. Ex. 8 to Pet'r's PI Mot. On September 18, 2019, Bin Lep filed a motion for preliminary injunctive relief, informing this Court that the first two

~~SECRET//NOFORN~~

▬▬▬ Pet'r's PI Mot. at 6. A scheduling conference was held that day.

At that conference, the Court learned that ▬▬▬

▬▬▬ Bin Lep's counsel said they would request a temporary restraining order. The next day, the government submitted a brief in opposition and Bin Lep submitted a memorandum on additional jurisdictional and abstention issues that had been raised at the scheduling conference. A hearing on Bin Lep's request for temporary emergency relief was held on Friday, September 20, 2019.

## II. Jurisdiction & Abstention

Before reaching the merits of Bin Lep's request for temporary emergency relief, there are threshold issues of jurisdiction and abstention. For the reasons summarized below, this Court is confident that it has jurisdiction to review Bin Lep's claims and that, at this time, based on the facts and arguments presented thus far, abstention is unwarranted.

### A. Jurisdiction

First, the government argues that 28 U.S.C. § 2241(e)(2) strips this Court of jurisdiction to review detainees' non-habeas claims, and that Bin Lep's claim is a non-habeas claim because it "does not go to any aspect of his confinement or its lawfulness." Resp'ts' Opp. Br. at 10. The controlling question is whether Bin Lep's claim is "the sort that may be raised in a federal habeas petition under section 2241." Aamer v. Obama, 741 F.3d 1023, 1030 (D.C. Cir. 2014). "[A] person is entitled to the writ of habeas corpus when, though lawfully in custody, he is deprived of some right to which he is lawfully entitled even in his confinement, the deprivation of which serves to make his imprisonment more burdensome than the law allows or curtails his liberty to a

~~SECRET//NOFORN~~

greater extent than the law permits." Id. at 1036 (quoting Miller v. Overholser, 206 F.2d 415, 420 (D.C. Cir. 1953)). Challenges to conditions of confinement as well as challenges to the place, fact, or duration of confinement are all proper habeas claims. Aamer, 741 F.3d at 1036.

In Hatim v. Obama, 760 F.3d 54 (D.C. Cir. 2014), the D.C. Circuit held that it had jurisdiction over detainees' habeas petitions challenging policies that placed an undue burden on their ability to meet with their lawyers. Id. at 57–58. The D.C. Circuit held that the "challenge falls squarely within the jurisdiction [it] recognized recently in Aamer" because the procedures challenged are "conditions of confinement." Id. The court's brief analysis of its jurisdiction did not rely on whether the detainee-lawyer meetings were about a current or future habeas petition or about the possibility of a future military commission proceeding, nor did the court question whether the restrictions on detainee-lawyer meetings would likely impact the duration of the detainees' confinement. See id. The allegation of an unlawful condition of confinement was enough.

Just as the detainees in Hatim challenged allegedly unlawful restrictions on their ability to meet with counsel while in confinement, Bin Lep is challenging allegedly unlawful restrictions on his ability to access and use exculpatory evidence and exercise other procedural rights while in confinement. Thus, the Court finds that Bin Lep's claims are "the sort that may be raised in a federal habeas petition." Aamer, 742 F.3d at 1030.

The government argues this case is different than Hatim because Bin Lep is challenging alleged violations of his procedural rights with respect to a possible future military commission proceeding and not with respect to a habeas petition. But the government has not explained why that is a meaningful distinction. The court in Hatim held that it need not consider whether "the alleged interference with access to counsel infringed the right to habeas relief" to determine that

~~SECRET//NOFORN~~

it had jurisdiction because the interference with access to counsel was, itself, an allegedly unlawful "condition of confinement." Hatim, 760 F.3d at 57. If the D.C. Circuit in Hatim did not need to consider whether the unlawful condition would affect the detainees' habeas proceedings, then whether a detainee's future proceeding is a habeas proceeding or a military commission proceeding appears to be of no consequence.

Moreover, even if Bin Lep did have to establish that denying him relief could affect the fact, duration, or place of his confinement, he has done so. Both parties agree that ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ which would in turn affect the fact, duration, or place of his confinement.[1] Whether the unlawful confinement is the result of a tainted habeas proceeding or a tainted military commission proceeding makes no difference.

Finally, at the hearing, the government informed the Court that the Convening Authority could consider the information obtained ▮▮▮▮ in deciding whether to refer the pending charges against Bin Lep to a military commission. Putting aside the question of whether that is lawful, ▮▮▮▮ could have an immediate effect on whether the charges against Bin Lep are dismissed, referred, or altered in a material way—which obviously could affect the fact, duration, or place of Bin Lep's confinement.

---

[1] The government's argument that Bin Lep's claim is purely speculative because a military commission may find the ▮▮▮▮ to be inadmissible, is—on the facts and arguments currently before this Court—unpersuasive. First, the Court doubts that the government would go through the herculean effort ▮▮▮▮ ▮▮▮▮ that the government says it likely won't be able to do again—if it thought it likely that the military commission would find them inadmissible. Second, and more importantly, Bin Lep makes several arguments as to why he will suffer irreparable harm regardless of whether the military commission, if there is one, ▮▮▮▮ See infra at 13–14.

6

~~SECRET//NOFORN~~

The government's second argument as to why this Court lacks jurisdiction is that the Military Commissions Act "vests exclusive jurisdiction over review of military commission matters in the D.C. Circuit." Resp'ts' Opp. Br. at 11. It is undisputed that the D.C. Circuit has "exclusive jurisdiction to determine the validity of a final judgment rendered by a military commission." 10 U.S.C. § 950g. The government, however, relies on Telecomms. Research & Action Ctr. (TRAC) v. FCC, 750 F.3d 70 (D.C. Cir. 1984), and In re al-Nashiri, 791 F.3d 71 (D.C. Cir. 2015), to argue that "any matters or issues that might pertain to those future appeals" to the D.C. Circuit from a military commission proceeding should be in the D.C. Circuit's exclusive jurisdiction. Resp'ts' Opp. Br. at 11–12.

There are two problems with the government's argument. First, in TRAC, the court held that the D.C. Circuit has exclusive jurisdiction "over claims that affect [its] future statutory review authority"; it had exclusive power to issue writs "to protect its prospective jurisdiction." TRAC, 750 F.3d at 76–77. Here, it's not clear how granting the requested relief would infringe on the D.C. Circuit's future authority to review a military commission's decision. Cf. Kiyemba v. Bush, No. 5-1509, 2006 WL 8440762 at *6 (D.D.C. June 29, 2006) (finding that "[a]llowing Petitioners to meet with their lawyers . . . is not the type of interim relief that even remotely risks infringing on the Circuit's possible exclusive jurisdiction . . . . [I]t has no bearing on the question of which Court has jurisdiction to review the merits of Petitioner's challenge to his detention.").

Second, the government's reliance on In re al-Nashiri is misguided. There, the court recognized it had authority to issue a writ to protect the later exercise of its appellate jurisdiction over the military commission's final judgment, see In re al-Nashiri, 791 F.3d at 76, but in that case there was an ongoing military commission proceeding, see id. at 71. Here, there is no pending military commission proceeding. The distinction matters: The D.C. Circuit's decision in

In re al-Nashiri relies heavily on In re Tennant, 359 F.3d 523, 529 (D.C. Cir. 2004). In In re Tennant, the court held it did not have authority to issue a writ of mandamus in aid of its prospective jurisdiction because the plaintiff "never initiated a proceeding with the FCC." Id. at 529. So, too, here there has been no referral of charges to a military commission.

As the court explained in In re Tennant, the D.C. Circuit cannot assert exclusive jurisdiction to issue a writ "solely on the basis that events might lead to a filing before an agency or lower court, which might lead to an appeal to [the D.C. Circuit]." Id. There must be "a proceeding of some kind . . . which might lead to an appeal." Id. "To dispense with even that preliminary requirement would effectively grant [the D.C. Circuit] exclusive jurisdiction to consider extraordinary writs in any case, because it is easy enough to spin out 'for want of a nail' scenarios from any set of facts that could eventually lead to [the D.C. Circuit]." Id.

The swearing of draft charges cannot be what triggers the D.C. Circuit's exclusive jurisdiction to issue writs on matters that could affect its jurisdiction over future military commission proceedings. For one, the statute at issue gives the D.C. Circuit jurisdiction over decisions by a "military commission," which by definition includes a military judge. See R.M.C. 103(a)(21). Thus, the government has not initiated a "military commission" proceeding just by swearing the draft charges against Bin Lep. Moreover, the swearing of draft charges against a detainee does not necessarily mean that there will be a military commission proceeding, much less an imminent one. Here, for example, the draft charges against Bin Lep have been pending since 2017. This Court finds that it is highly unlikely that the D.C. Circuit has exclusive jurisdiction over matters like the one here, when no military commission proceeding has been initiated against the petitioner, and one is not imminent.

8

~~SECRET//NOFORN~~

Hence, the Court is confident both that it has jurisdiction and that it is not infringing on the D.C. Circuit's exclusive jurisdiction to review final judgments of military commissions.

## B. Abstention

The government next argues that federal courts should "abstain from interfering in ongoing criminal matters pending in coordinate judicial systems," including military commissions. Resp'ts' Opp. Br. at 13 (citing several cases, including In re al-Nashiri, 835 F.3d 110, 122–28 (D.C. Cir. 2016) ("In re al-Nashiri II"). The government also characterizes this abstention argument as an exhaustion requirement, stating that habeas petitions from military prisoners should not be entertained by federal civilian courts until all available remedies within the military court system have been invoked in vain. Resp'ts' Opp. Br. at 13.

But this set of arguments share the same flaw: there is no pending matter in any other judicial system, including any military commission. The D.C. Circuit directly addressed this issue in Obaydullah v. Obama, 609 F.3d 444 (D.C. Cir. 2010), where the court considered whether proceedings on a detainee's habeas petition should be stayed because military commission charges had been sworn against him. Id. at 445. The court held that "abstention is surely not appropriate where, as here, there is no military commission, let alone an ongoing proceeding." Id. at 448. "[W]hatever the point at which a proceeding before a military commission can be considered pending for purposes of abstention, it has not been reached here, where charges against Obaydullah have not been referred and the Government has provided us with no reason to believe such a referral is imminent." Id. The facts here are no different. Charges were sworn against Bin Lep, but there has been no referral to a military commission. Give that charges were sworn back in 2017, there is no reason to think referral is imminent. Abstention, therefore, is not appropriate.

9

~~SECRET//NOFORN~~

The government tries to distinguish <u>Obaydullah</u> on the grounds that the habeas petition at issue there had nothing to do with the military commission process. Such line drawing is tricky business. For one, Obaydullah's petition challenged the lawfulness of his detention. <u>Id.</u> at 445. If the court granted Obaydullah relief by releasing him, that would affect the military commission's ability to convict him. Even barring release, if the court granted him certain procedural rights—like access to certain evidence—in contesting his confinement, that too could affect a future military commission proceeding.

The Court recognizes, however, that the relief requested here requires the Court to evaluate a decision by the Convening Authority and directly interfere with the pre-referral process. Still, abstention is not proper in a case like this one where the petitioner is alleging he's about to suffer irreparable harm and he has nowhere else to turn for relief. The government's heavy reliance on <u>In re al-Nashiri II</u> only highlights this point. There, the D.C. Circuit held that a court should not "halt the workings of a military commission by challenging in federal court an issue that could just as easily be considered by the commission and reviewed by a federal appellate court." <u>In re al-Nashiri II</u>, 835 F.3d at 125. The court's justification for abstention largely relied on the fact that there was a military commission set up to adequately protect the detainee's rights and that the final decision of that commission could be appealed to the D.C. Circuit. <u>See id.</u> at 122–23. Here, there is no such military commission, and nowhere else for Bin Lep to turn to vindicate his rights. In fact, Bin Lep's argument is that he is being denied access to all the procedural rights that a military commission would afford him, including the right to appeal the Convening Authority's decisions.

The decision in <u>In re al-Nashiri II</u> not only relied on the fact that there was an ongoing military commission proceeding to protect petitioner's rights; it also relied on the fact that the

petitioner's allegations "say nothing about the competence of the military commission itself." Id. at 129. Here, however, the heart of Bin Lep's claim is that he is being denied any process by which to challenge the Convening Authority's decisions, which—he contends—are about to have an irreparable impact on his ability to present a defense at any future military commission proceeding, and may even have an irreparable impact on whether the charges against him are dismissed, referred, or altered. In short, Bin Lep is not trying to duck the military commission process; he is asking for decisions that will have a material effect on any military commission proceeding not to be made until there is a military commission.

Thus, while this Court is highly sensitive to the interests that justified abstention in In re al-Nashiri II, the Court finds such interests are not—at this time and on the facts and arguments currently before the Court—at stake in this matter and abstention is, therefore, not warranted. As the Court understands it, Bin Lep is not asking this Court to decide issues a military commission should decide; he is instead asking this Court to preserve the status quo until a military commission exists in order to make the very decisions that, according to the petitioner, a military commission should make.

### III. Merits

The Court turns, finally, to the merits of Bin Lep's request for temporary emergency relief. A party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

On the first factor, the Court finds that Bin Lep is at least likely to succeed on some of his statutory claims. The government provided very little on this factor in its opposition brief. The

Military Commissions Act guarantees the accused certain rights, including the right "[t]o present evidence in [his] defense, to cross-examine the witnesses who testify against [him], and to examine and respond to all evidence admitted against [him]." 10 U.S.C. § 949a(b)(2)(A). The rules implementing those rights include the right to receive exculpatory evidence as soon as practicable after referral of charges, including evidence that reasonably tends to impeach the credibility of a witness. R.M.C. 701(e). The rules also provide that the military judge will prescribe the terms of discovery, R.M.C. 703(a); determine when the defense should have access to classified, exculpatory material, R.M.C. 701(f); and decide various pre-trial motions, R.M.C. 905(a)–(b), 906.

Bin Lep does not yet have access to these procedural protections because no charges against him have been referred to a military commission. Despite that, the prosecution is proposing ▮▮▮ because the Convening Authority ordered ▮▮▮ ' See ▮▮▮ March 8, 2019 Order at 1–2.

Bin Lep argues that the Convening Authority's March 8, 2019 order unlawfully denies him his procedural rights guaranteed by the Military Commissions Act and the Rules for Military Commissions because ▮▮▮ See Pet'r's PI Mot. at 8–17. The Court finds Bin Lep is likely correct that there are no ▮▮▮ Neither the Convening Authority—nor government counsel in its briefs or at

12

the hearing held on September 20, 2019—could articulate any reason ▮▮▮

need to take place <u>prior to any referral of charges</u> to a military commission.

The Convening Authority's order states ▮▮▮

▮▮▮ March 8, 2019 Order at 1. This explanation may justify ▮▮▮

▮▮▮ but it does not explain or justify ▮▮▮

▮▮▮ when the defendant has no access

to a military judge and cannot exercise many of the procedural rights that the rules grant the

accused in the pre-trial discovery process.

The government argues that ▮▮▮

▮▮▮ See Resp'ts' Opp. Br. at

18; Zelnis Decl. ¶¶ 7–8.  But that concern, which was not articulated in the Convening

Authority's March 8, 2019 order, probably does not create ▮▮▮

▮▮▮ The Court has heard no clear, compelling reason why ▮

▮▮▮

▮▮▮ See Resp'ts' Opp. Br. at 18–

19.  But the ▮▮▮ cannot be of the government's own making.  Indeed, this

argument did not exist when the government sought and the Convening Authority approved the

13

███ And even if it did, pure speculation ███ ███ probably does not amount to ███

Second, the Court finds that Bin Lep is likely to suffer irreparable harm in the absence of preliminary relief. Bin Lep explains that ███ ███ The government agrees ███ ███ Most importantly, Bin Lep argues that if ███ ███

Thus, if Bin Lep is correct, and he is being unlawfully denied an opportunity to ███ ███ or use crucial classified documents ███ ███ then Bin Lep will likely not have an opportunity to do so in the future. At the hearing, the government seemed to agree: there will be only one bite at the apple. Thus, the Court finds it is likely ███ Bin Lep will be unlawfully denied certain procedural rights— ███ ███ where the harm could be remedied.

The government argues that there is no irreparable harm because the military judge in the military commission may find ███ to be inadmissible. See Resp'ts' Opp. Br. at 16–17. However, Bin Lep argues that ███ ███ the government is putting pressure on the military judge ███ See Pet'r's PI Mot. at 22. Hence, the prosecution is

forcing the future military commission into a difficult "all or nothing" position. That posture is arguably much worse for Bin Lep than having the military commission oversee ▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Additionally, Bin Lep points out that the standard ▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ and that, here, the government's own conduct makes it far less likely that ▉▉▉▉▉▉▉▉▉▉ Id. at 23. Finally, at the hearing Bin Lep's counsel explained that ▉▉▉▉▉▉▉▉▉ will likely affect the amount of pressure on Bin Lep—▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉—to accept a plea agreement if charges against them are ever referred. In other words, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ could be used to coerce Bin Lep into accepting a less favorable plea agreement, inflicting irreparable harm. Thus, at this time, the Court finds it is at least likely that Bin Lep will suffer irreparable harm ▉▉▉ ▉▉▉▉▉▉▉▉.

As to the third factor, the Court finds that the balance of equities likely tips in favor of Bin Lep. There are certainly costs ▉▉▉▉▉▉▉▉▉▉▉▉▉▉ including the financial costs, as well as the lost time and resources that went into the government's coordination efforts ▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. See Resp'ts' Opp. Br. at 18–19; Zelnis Decl. ¶¶ 7–14. The government has also explained that there is a real risk that delaying ▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Id. Most of these harms, however, are the result of the prosecution's decision to pursue ▉▉▉▉▉▉▉▉▉▉ Convening Authority's order granting ▉▉▉▉▉▉▉▉▉▉▉. The respondents can't bootstrap these harm to justify its prior decisions. Further, these harms do not appear to outweigh the harms alleged by Bin Lep, which include the denial of basic procedural rights that could have a material impact on the fact, duration, or place of his confinement.

~~SECRET//NOFORN~~

Finally, the Court finds that granting temporary emergency relief will serve the public interest by safeguarding the detainees' basic procedural rights and ensuring that a future military commission is not forced into a position where it cannot effectively try Bin Lep because much of the ▆▆▆▆▆▆▆▆▆▆▆▆ has been irreparably tainted. Thus, on the current record, the Court concludes that it is likely that Bin Lep will succeed, to some extent, on the merits; that he will suffer irreparable harm if relief is not granted; that the balance of equities favors Bin Lep; and that the public interest will be served by the grant of temporary emergency relief.

Hence, upon consideration of Bin Lep's oral request for temporary emergency relief, the memoranda of law in support of and in opposition to his motion, the hearing held September 20, 2019, and the entire record herein, it is hereby ORDERED that respondents are restrained ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

SO ORDERED.

Dated: September 23, 2019

/s/
John D. Bates
United States District Judge